May it please the Court, Kayla Barring on behalf of Petitioner Raman Kumar. The REAL ID Act requires that an adverse credibility finding be based on a totality of the circumstances, including a respondent's explanation for any perceived inconsistencies. In this particular case, the I.J. based his adverse credibility finding on four specific reasons. In three of these instances, the I.J. did in fact give Mr. Kumar the opportunity to explain the inconsistencies. However, in the I.J.'s analysis of why Mr. Kumar's explanations were not persuasive, the I.J. misapprehended the record each and every time, thereby rendering an adverse credibility finding that didn't consider the totality of the circumstances. First, the I.J. cites two false asylum claims that Mr. Kumar submitted in Canada. Specifically, the I.J. is not persuaded by Mr. Kumar's explanation that he was in a bad mental state when he submitted and testified to that application. Yeah, counsel, let me ask you a question about that, because I really have a little trouble understanding an explanation for giving a false story under oath that I was in a bad mental state. You know, like, to me, I could be wrong and I'm just one judge, but for this, for Mr. Kumar to, under oath, give a false story to Canadian officials seems like it's the kind of thing that an I.J. should be able to rely on. If the I.J. wants to disbelieve, maybe he doesn't have to, but it's hard to see how that's not substantial evidence. Excuse me. Your Honor, I do agree that this is something that the I.J. should be able to, should be able to rely on. However, case law requires that the I.J. does give respondent an explanation and that the I.J. consider that explanation. And the problem with the record here is that the I.J. didn't properly consider his explanation. The I.J. at page 46 in the record, when he says that he's not persuaded by Mr. Kumar's explanation, the I.J. specifically states, it's important to note that in the decision by Canadian officers, they described the respondent as managing to live a normal life with normal activities while in Canada, and the I.J. then cites to the Canadian decision, which is in our record at page 258, in the decision, what it actually says is, in the meantime, according to the claimant's testimony, he managed to live a normal life with normal activities. He even went through a third arrest where he was once again severely tortured. Clearly the Canadian officials here are talking about Mr. Kumar living a normal life in India, not while he was in Canada. The issue that I have is that the I.J. here was not considering the totality of the circumstances, because his analysis of Mr. Kumar's explanations misapprehended the record. In order for this credibility determination to be made, the I.J., the trier of fact, needs to reconsider his determination, considering the record as it is, properly apprehended by Mr. Kumar. After the I.J. states why he was unpersuaded by Mr. Kumar's explanation regarding the Canadian asylum act... Can I ask you about that? Because it's obviously a central issue. In his petition, your client didn't voluntarily say, as he, you know, early on in the proceeding, that I misrepresented the story in Canada, and the reason was because of X, Y, or Z. So he didn't mention that. He was confronted with his inconsistent statement. Isn't that the case? Well, he did. You're absolutely right, Your Honor, as far as his application. In his application, he did not mention it. And on direct, he did not mention it. So he was confronted with that inconsistent position. He was asked if he had, yes, Your Honor. Okay. Let me ask you, then one of the explanations or an explanation he gave was that I was in a bad state of mind. Otherwise, I wasn't thinking correctly. I said things that I probably shouldn't have said. I didn't mean to say those. Something along those lines, correct? That was his explanation. My understanding was slightly different, that he was in a bad state of mind due to his fear. Okay. Whatever. But he was not thinking clearly. Yes, Your Honor. But then what about his explanation that it was this unscrupulous interpreter who said if you want to stay in Canada, you better tell this false story? And he went along with that. That's inconsistent or different than being in a bad state of mind. I'm going to have to disagree with that, Your Honor. Like I said, my understanding of what he said was he was in this bad state of mind due to the fear that he was experiencing, due to his fear of returning to Canada. Due to his fear of returning to India and what had happened to him. After this unscrupulous interpreter wrote this account that he then signed, the interpreter told him, now, if you don't go along with what I wrote, these officials here in Canada, they're going to send you back. And due to his fear, he agreed to go along with that. Second, the immigration judge pointed to country conditions as another reason for his adverse credibility finding. He states that country conditions were not consistent with Mr. Kumar's testimony. Specifically, at page 47 in the record, the IJ states, Respondent says that he had never been arrested prior to March 22, 2000, in India. The Respondent's testimony is not persuasive in light of the evidence of country conditions that the Respondent himself offered. If he did join in 1994 and he was very active in the movement advocating human rights, if he was pressing the government to expel him from Canada, he would not have been arrested. If he did not explain disappearances of those individuals, then the Respondent has not given an adequate explanation why, as to why the Indian government would have waited until 2000 to arrest him. However, if you look at the actual transcript, at page 173, when Mr. Kumar is asked about his activities with this group, he states, we used to contact the families of these people, and we just try to find out, contact them and find out when this person was kidnapped. He never states that he was pressing the government. He states that his activities involved speaking to families. And if you move ahead to page 175, when he is asked why he was arrested, he says, because they came to know that we were working against them, them being the police. Again, this is a misapprehension of the record by the immigration judge. And the immigration judge gives an additional reason. At page 49 in the record, the immigration judge states that, with respect to the second alleged arrest, he, being Mr. Kumar, has not described consistently what he had to do to obtain his release. However, when asked in testimony, when asked at page 179 in the transcript, why were you finally released, the immigration judge states, because they came to know that we were working against them, them being the police. He states, because they wanted information about the group. On cross, he's then also asked if he said, excuse me, the government attorney says, in your U.S. application, you indicated that you had to pay 30,000 rupees. And he says, yes, that is true. I had to pay 30,000. In his application, he states, I had to pay 30,000 rupee bribe, and I had to agree to the police that I would give them information about this group. He, again, there, is not inconsistent. Now, in a case like this, where every explanation that the I.J. gives for not being persuaded by the explanation of the respondent, where the I.J. every single time misapprehends the record, that finding can't be based on the totality of the circumstances. The plain language of the Real ID Act requires that this case be remanded for the immigration judge to consider this based on the actual record. I would like to reserve the rest of my time. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Jacob Basher, and I'm here on behalf of the Attorney General of the United States. First, I would like to address Petitioner's argument with respect to his Canadian asylum application. As he considered that, he did not volunteer that information in the immigration court. He failed to, while he claims in his opening brief that it was, he spontaneously told that, you know, he was, he submitted an asylum application, and that asylum application was fraudulent. The record does not reflect that. In fact, if we look at his American asylum application on page 240, I would just like to read you from that application with a specific question asked Petitioner as to whether there are any other, whether he applied for any other relief. And just bear with me. He said AR-240? AR-240, that's correct. Question 2B, have you, your spouse, your children, or other family members, such as your parents and siblings, ever applied for asylum? Or received any lawful status in any country other than the one from which you are now claiming asylum? And he answered no. He just stated that I was residing in Canada, the question, and there's a box in response to question 2A, I left India in August 2000, and I was residing in Canada from August 2000 to February 12, 2010. He did not indicate as to what happened in Canada, that in Canada he obtained benefits, he applied for asylum, he submitted his asylum application. The authorities found that he was not credible. This is the very, very, very important to his asylum claim. So the information about the Canadian application came from the government? That's correct. The government was the one who had to procure that evidence. Another thing is that, well, he claims that he had some sort of mental issues. He did not, there's no real evidence except his self-serving claims that he had mental issues. And the fact is that he was in Canada and he claimed that, well, he had free medical benefits. He claimed that somehow him going to the hospital would affect his asylum application there. It's definitely not plausible. I would like to point out that the IJ advised Petitioner that this is a real ID act case. And this is the notice right there. He knew that, about the burden of proof, he knew that the explanation as to what happened in Canada would be required from him, and yet he failed to volunteer that information. He, his claim that basically somehow he was in Canada and he claimed that, well, he had free medical benefits. His interpreter and attorney purportedly fabricated the claim for him while he had himself has a claim in India based on his participation with the Colorado Mission Action Committee is also very dubious. I would also like to point out, I would also like to point out that the issue with respect of his current asylum claim in India based on his participation in Colorado Mission Action Committee, it is not clear. At first I would like to point out to the evidence, the letter that he provided. It is not clear why the Colorado Mission Committee, the organization which was formed in 1898, would use stationary of the organization now defunct, or at least we don't know whether it's defunct or not. Yet it was signed by the official of that organization as to why the evidence was obtained in 2010, not in 2000. Another thing is that he claimed that he was stabbed in India, while in Canada he presented a claim that he was shot, and ultimately he testified that he was not shot by the police, he was shot during some sort of celebration. So all of this inconsistencies and his implausible explanation in light of the fact that he blatantly lied to immigration authorities in Canada, in Canada, in the United States, in Canada, came to this country and presented a questionable claim, supports the agency determination, and he failed to provide any evidence compelling that conclusion contrary to the one reached by the board. If the Court has no further questions. It appears not. I have no questions. Thank you, counsel. Rebuttal, please. I have a question about the explanation that the fabricated story was created by the interpreter. Is it your position that the interpreter created the complete scenario? Yes, based on the record and what Mr. Kumar said, he says he told the interpreter his story, the interpreter wrote out his story. So the interpreter created the story from whole cloth? Yes. How did he get all these details in? It seems that the interpreter made up most of those details, if not all of them. My understanding from the record is that Mr. Kumar relayed the actual story and then wrote whatever he wanted and told Mr. Kumar to sign it. If that's the case, if your client told the actual scenario story that you're now relying on, correct? Yes, Your Honor. Why in the world would the interpreter change that story if you think it's a good story? I don't follow that. What would be the motivation for completely undoing the story that you want to rely on today? Well, Your Honor, I mean, that would require some speculation that I don't feel entirely comfortable doing. I'm not sure why the interpreter would do that. I don't think Mr. Kumar knows either. The interpreter did it and asked him to sign. And he did so. Real quick before my time runs out, I would just like to say that, you know, I can understand why the court would have some issues here. However, the issue here is that the I.J. misapprehended the record. He must make his determination based on a totality of the circumstances under the statute, and therefore the statute necessarily requires that this would be remanded to the I.J. to reconsider his decision. Well, counsel, let me ask you this. What's your response to opposing counsel's observation that in the application your client indicated that he had not sought asylum in another country previously? My response would be that that's not in front of this court. That's not one of the issues that the I.J. cited in his reasoning for making an adverse credibility determination. Well, you just said the totality of the record is in play, and that's part of the record. Yes, the totality of the record is in play, but the I.J., the trier of fact, is the one who has to interpret that record. And as you can see in his original decision, he misapprehends that record and therefore wasn't looking at the totality of the circumstances. So is it your representation that the application was not before the I.J.? That was not part of the evidence that was before the I.J.? That's what he was acting on. No, Your Honor. That's not what I was trying to say at all. Simply what I meant was that even though it was in front of the I.J., that it wasn't in his decision as part of what he considered when making his adverse credibility determination. All right. Thank you, counsel. As a practical matter, you think we should remand it so that the judge can now look at the application, which misrepresents what happened in Canada? And you think the result might be different? I don't know whether or not the result would be different, but I think that based on the statute, that is the I.J.'s call to determine. All right.
judges: Huck, Gould, Rawlinson